IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
*******

| | |
|---|---|
| **KOSEI OHNO,** ) | |
| ) | |
| Plaintiff, ) | CASE NO. 3:25-cv-00014 |
| ) | |
| v. ) | ACTION FOR TEMPORARY |
| ) | RESTRAING ORDER, PRELIMINARY |
| **HONORABLE MARIO BROOKS,** in ) | AND PERMANENT INJUNCTIVE |
| his capacity as **COMMISSIONER OF** ) | RELIEF, DECLARATORY JUDGMENT, |
| **THE VIRGIN ISLANDS POLICE** ) | AND ADMINISTRATIVE APPEAL |
| **DEPARTMENT** and **GOVERNMENT** ) | |
| **OF THE VIRGIN ISLANDS,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

**SECOND AMENDED AND FIRST SUPPLEMENTAL COMPLAINT**

**COMES NOW** Plaintiff Kosei Ohno, by and through his undersigned attorneys, and states the following as and for his Second Amended and First Supplemental Complaint against the named Defendants:

**JURISDICTION**

1. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1367(a) (supplemental jurisdiction), and 48 U.S.C. § 1612(a).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1), (2).

**PARTIES**

3. Plaintiff is a principal of St. Thomas Marina Corp., the general partner of Crown Bay Marina, L.P., a Virgin Islands limited partnership, which owns and operates the Crown Bay Marina in St. Thomas, U.S. Virgin Islands.

Case: 3:25-cv-00014-RAM-EAH   Document #: 46   Filed: 12/01/25   Page 2 of 18

Kosei Ohno v. Honorable Mario Brooks, et al.
District Court Case No. 3:25-cv-00014
Second Amended and First Supplemental Complaint
Page 2 of 18

4. Defendant Honorable Mario Brooks ("Commissioner Brooks") is the sitting Commissioner of the Virgin Islands Police Department ("VIPD"), an executive department of the Government of the Virgin Islands.

5. Defendant Government of the Virgin Islands is the governing body for the United States Virgin Islands created by the United States Congress in the Revised Organic Act of the Virgin Islands of 1954, as amended ("ROA").

## FACTUAL ALLEGATIONS

6. Among other duties, Commissioner Brooks is tasked by law with the licensure of persons to possess and carry firearms in the Territory, and other duties relating to firearms, found in Title 23, Chapter 5, Virgin Islands Code, Sections 451 through 489a ("Chapter 5").

7. Upon information and belief, the only administrative firearms regulations the VIPD has promulgated are found at Title 23, Chapter 5, Virgin Islands Rules & Regulations, Subchapter 485, Sections 485-1 through 485-16 ("Firearms Regulations"), which were effective October 28, 1988.

8. The Second Amendment to the United States Constitution ("Second Amendment") applies to U.S. Virgin Islands with "…the same force and effect there as in the United States or in any State of the United States…" pursuant to ROA § 3, 48 U.S.C. § 1561.

9. The Fourth Amendment to the United States Constitution ("Fourth Amendment") applies to U.S. Virgin Islands with "…the same force and effect there as in the United States or in any State of the United States…" pursuant to ROA § 3, 48 U.S.C. § 1561.

10. The second sentence of the Fourteenth Amendment to the United States Constitution ("Fourteenth Amendment") applies to U.S. Virgin Islands with "…the same force and

Case: 3:25-cv-00014-RAM-EAH   Document #: 46   Filed: 12/01/25   Page 3 of 18

Kosei Ohno v. Honorable Mario Brooks, et al.
District Court Case No. 3:25-cv-00014
Second Amended and First Supplemental Complaint
Page 3 of 18

effect there as in the United States or in any State of the United States…" pursuant to ROA § 3, 48 U.S.C. § 1561.

11. The Legislature is empowered with broad authority make laws for the U.S. Virgin Islands so long as said laws are "…not inconsistent with this chapter or the laws of the United States made applicable to the Virgin Islands…" pursuant to ROA § 8(a), 48 U.S.C. § 1574(a).

12. In 2018, as required by Chapter 5 and the Firearms Regulations, Plaintiff applied to the VIPD Firearms Division for "concealed carry" firearms licenses for two pistols, a 9mm HK P30 SK ("HK") and a .300 Sig Sauer MCX ("MCX") – one license for each firearm.

13. Both the HK and MCX are handguns as defined in Chapter 5.

14. The then-VIPD Commissioner approved Plaintiff's application and issued him concealed carry licenses for both firearms.

15. In order to obtain his initial concealed carry licenses for these firearms, Plaintiff had to pay several fees for, or in connection with, the following documents that were required as part of the renewal process: (a) $50.00 for each firearm license (currently $75.00 per gun for new applications); (b) the licensure renewal application form; (c) a VIPD criminal background check; (d) a finger print card; (e) three notarized affidavits signed by local character references–character witnesses from the state of residence were not permitted (f) a notarized affidavit with reason for the request of "permission" to obtain a firearm; (g) a firearms training certification by a local authorized instructor, because Plaintiff's prior firearms training certification from the state of residence was not acceptable to the VIPD; (h) four color photos; and (i) presenting cumulative and overly burdensome personal identifications including an official copy of the U.S. passport, birth certificate, and social security card.

Case: 3:25-cv-00014-RAM-EAH   Document #: 46   Filed: 12/01/25   Page 4 of 18

Kosei Ohno v. Honorable Mario Brooks, et al.
District Court Case No. 3:25-cv-00014
Second Amended and First Supplemental Complaint
Page 4 of 18

16. As part of the initial application process, Plaintiff was required to bring the HK and the MCX to the VIPD Firearms Bureau for physical inspection, and Plaintiff was required to surrender both firearms to the VIPD Firearms Bureau while awaiting VIPD Commissioner's discretionary approval, even though there is no statutory authority for Police Commissioner such surrendering or requirement to respond within a reasonably finite time frame, effectively creating a mandatory, unknown waiting period).

17. As a prerequisite to obtaining his concealed carry licenses, Plaintiff was required to allow representatives of the VIPD to enter his residence in St. Thomas to verify that he had an adequate safe or lockbox in which to store his handguns, even though there is no such requirement in Chapter 5 or the Firearms Regulations.

18. As a prerequisite to obtaining his concealed carry licenses, Plaintiff was required to take an additional, local handgun training course, even though as a concealed carry permit holder in the State of Washington Plaintiff had previously completed a course in WA, and receive a certificate of completion from a local instructor – which Chapter 5 only requires for concealed carry permits - which he then presented to the VIPD Firearms Bureau.

19. In 2021, again as required by Chapter 5 and the Firearms Regulations, Plaintiff applied to the VIPD to renew his concealed carry licenses for the HK and the MCX – one license for each firearm.

20. The then-VIPD Commissioner approved Plaintiff's application and renewed his concealed carry licenses for both firearms.

21. In order to obtain these renewed firearms licenses, Plaintiff was required to pay a fee of $50.00 per gun ($100 for two guns) for each license (license fee per gun has since increased to overly burdensome $150.00 per gun).

Case: 3:25-cv-00014-RAM-EAH  Document #: 46  Filed: 12/01/25  Page 5 of 18

Kosei Ohno v. Honorable Mario Brooks, et al.
District Court Case No. 3:25-cv-00014
Second Amended and First Supplemental Complaint
Page 5 of 18

22. As part of the renewal application process, Plaintiff was again required to bring the HK and the MCX to the VIPD Firearms Bureau for physical inspection.

23. Between 2018 and today, Chapter 5 has not been amended in any manner that affects Plaintiff's qualifications to obtain further renewals of his concealed carry licenses or the status and/or classification of his firearms.

24. Between 2008 and 2022, the United States Supreme Court clarified and emphasized that the Second Amendment is a right personal to all law-abiding persons, restricts federal, state, and local governments from unduly infringing on this personal right, and includes the presumptive right to possess and carry firearms for defense.

25. The Government of the Virgin Islands has not substantively amended Chapter 5 to conform it to the clarified scope of the Second Amendment.

26. The Firearms Regulations have not been amended in accordance with Virgin Islands laws governing the promulgation of rules and regulations since they were first promulgated in 1988.

27. Recently, the Governor of the Virgin Islands publicly stated that the Territory's existing firearms laws reflect a failed policy.

28. Recently, the United States Attorney General emphasized that all governments under the United States flag have the duty to protect the Second Amendment rights of all law-abiding people.

29. In August 2024, again as required by Chapter 5 and the Firearm Regulations, Plaintiff attempted to renew his concealed carry licenses for both firearms but VIPD refused to accept Plaintiff's application until Plaintiff obtained a Virgin Islands driver's license.

Case: 3:25-cv-00014-RAM-EAH   Document #: 46   Filed: 12/01/25   Page 6 of 18

Kosei Ohno v. Honorable Mario Brooks, et al.
District Court Case No. 3:25-cv-00014
Second Amended and First Supplemental Complaint
Page 6 of 18

30. For the first time ever, Plaintiff was advised he was required to provide a Virgin Islands driver's license in order to obtain a renewal of his concealed carry firearms licenses.

31. Plaintiff resides in the State of Washington and, when he comes to the Virgin Islands to attend to the business of the Crown Bay Marina, does not remain in the Territory for a period of time that requires him to obtain a Virgin Islands driver's license.

32. On October 21, 2024, Plaintiff, through counsel, wrote to Commissioner Brooks and Lt. Jorge Gonzalez, the Director of the VIPD Firearms Bureau, detailing why Chapter 5 does not require him to have a Virgin Islands driver's license and requesting that his concealed carry licenses for his HK and MCX be renewed.

33. The October 21, 2024 letter also detailed the host of reasons Plaintiff obtained and maintains firearms as the principal of Crown Bay Marina, a Virgin Islands business, including, but not limited to: (a) a 2017 scissors assault on Plaintiff and other Crown Bay Marina employees by a former employee; (b) a 2019 firearm discharge on Crown Bay Marina property; (c) Plaintiff was required to pursue, and obtain, a temporary restraining order against an opposing party in civil litigation because the opponent threatened Plaintiff and Crown Bay Marina employees; (d) Plaintiff has received training and certification for firearms and explosives because Crown Bay Marina maintains certain security standards required by the Department of Homeland Security and the United States Coast Guard; and (e) Plaintiff has a concealed carry license from the State of Washington.

34. The October 21, 2024 letter also noted that the Commissioner's decision was arbitrary and capricious and violated Plaintiff's rights under the Second Amendment, as construed by the United States Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen,* 597 U.S. 1, 142 S.Ct. 2111 (2022) ("*Bruen*").

Case: 3:25-cv-00014-RAM-EAH    Document #: 46    Filed: 12/01/25    Page 7 of 18

Kosei Ohno v. Honorable Mario Brooks, et al.
District Court Case No. 3:25-cv-00014
Second Amended and First Supplemental Complaint
Page 7 of 18

35. For all of the reasons set out in the October 21, 2024 letter, Plaintiff requested Commissioner Brooks grant his renewal application.

36. Despite making inquiries, Plaintiff did not receive any response from Commissioner Brooks for several months.

37. During the inordinately long waiting period, Plaintiff was advised that VIPD would treat the filing of his renewal application as extending the life of his concealed carry firearms license for the HK and MCX.

38. By letter dated March 12, 2025, almost 5 months after Plaintiff submitted his renewal application, Commissioner Brooks advised he denied the renewal application for the MCX because it was an "assault weapon" under the Virgin Islands Code, had the capacity to be converted into a short-barreled rifle under federal regulations and the National Firearms Act ("NFA") – without stating the source of his authority to enforce federal statutes and regulations –, the MCX was not a "standard handgun" under Virgin Islands law and a concealed carry license is not available for that weapon, the MCX had a removable scope, and the Commissioner's decision did not violate *Bruen* because the MCX is a "military-style or tactical firearm."

39. Because Commissioner Brooks' March 12, 2025 letter did not address Plaintiff's renewal application as to the HK at all, Plaintiff's counsel requested clarification on the status of his renewal application for that firearm.

40. Plaintiff was advised the renewal application as to the HK was approved and would be issued in the ordinary course.

41. Plaintiff, again through counsel, replied by letter dated March 20, 2025, pointing out that the cited federal regulation, by its own definitions, does not apply to the U.S. Virgin Islands, the MCX is not an assault weapon as defined by Virgin Islands law, the presence of

Case: 3:25-cv-00014-RAM-EAH   Document #: 46   Filed: 12/01/25   Page 8 of 18

Kosei Ohno v. Honorable Mario Brooks, et al.
District Court Case No. 3:25-cv-00014
Second Amended and First Supplemental Complaint
Page 8 of 18

absence of a scope is not a basis for changing the classification of a firearm under Virgin Islands law, the MCX is eligible for a concealed carry license under Chapter 5, and reiterated that the Commissioner Brooks' decision was an arbitrary abuse of discretion and requested issuance of the renewed concealed carry license for the MCX.

42. Despite Plaintiff's request for a response by March 26, 2025, Commissioner Brooks failed to further respond at all, prompting Plaintiff to file this action seeking injunctive (immediate, preliminary, and permanent) and declaratory relief and as his timely appeal of Commissioner Brooks' decision pursuant to 23 V.I.C. § 472.

43. This case was reported in the on-line press the morning after it was filed, announcing to the world that Plaintiff no longer has one of his chosen firearms and leaving him, and his business and its employees, open as potential targets of the criminal element.

44. On or about April 23, 2025, Plaintiff, accompanied by counsel, went to the VIPD to obtain his concealed carry license for his HK.

45. On their arrival at the Firearms Bureau, Plaintiff and counsel were advised Defendant Commissioner wanted to meet with them.

46. At said meeting, Defendant Commissioner Brooks advised he was willing to issue a home protection license to Plaintiff for his MCX, but not a concealed carry license.

47. To avoid the possibility of having an unlicensed firearm in the U.S. Virgin Islands and the potential penalties for unauthorized possession of a firearm, Plaintiff agreed to accept the home protection license for the MCX.

48. On or about April 23, 2025, during this same visit, after paying a total of $300.00 in licensing fee, Plaintiff received a license for his MCX bearing the designation "HOME PROTECTION" and a9license for his HK bearing the designation "BUSINESS PROTECTION."

Case: 3:25-cv-00014-RAM-EAH  Document #: 46  Filed: 12/01/25  Page 9 of 18

Kosei Ohno v. Honorable Mario Brooks, et al.
District Court Case No. 3:25-cv-00014
Second Amended and First Supplemental Complaint
Page 9 of 18

49. On or about May 26, 2025, the Court issued its Preliminary Injunction Order directing Defendants to issue a "concealed carry license" to Plaintiff for his MCX, extending his 2021 license for three years.

50. On or about June 23, 2025, Plaintiff retrieved from the VIPD Firearms Bureau the extended MCX concealed carry license ordered by the Court; however, the license bore a "BUSINESS PROTECTION" endorsement.

51. On or about June 27, 2025, Plaintiff, through counsel, wrote to counsel for Defendants inquiring about the meaning of the "BUSINESS PROTECTION" endorsement, noting that neither Chapter 5 nor the Firearm Regulations provide for such an endorsement, and requesting dates by which Plaintiff would receive concealed carry licenses for his HK and his MCX.

52. On or about July 10, 2025, Defendants' counsel responded advising that "BUSINESS PROTECTION" license and "concealed carry" license are equivalents, and that Defendants also renewed, rather than extended, Plaintiff's MCX license.

53. On or about June 27, 2025, Plaintiff wrote to Defendant Commissioner Brooks: (a) advising him that Plaintiff intended to bring to the U.S Virgin Islands a noise suppressor for his MCX for which he had the appropriate certification from the U.S Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and 30-round magazines which are commonly used and came as standard equipment for the MCX; (b) requesting confirmation that Plaintiff could lawfully bring to and possess in the U.S. Virgin Islands said noise suppressor and magazine; and (c) requesting that, if Defendant Commissioner Brooks's position was that said noise suppressor and standard magazines could not be lawfully brought to and possessed in the U.S. Virgin Islands, that he provide the legal authority for his position.

Case: 3:25-cv-00014-RAM-EAH     Document #: 46     Filed: 12/01/25     Page 10 of 18

Kosei Ohno v. Honorable Mario Brooks, et al.
District Court Case No. 3:25-cv-00014
Second Amended and First Supplemental Complaint
Page 10 of 18

54. On July 11, 2025, Plaintiff received a response from VIPD Officer Richard Velazquez advising there was an "…established policy and practice of the Virgin Islands not to allow the use of suppressors or such large capacity magazines…"; however, no legal authority for this policy and practice was provided in the response.

55. The July 11, 2025 response from Officer Velazquez also advised Plaintiff he had 10 days to appeal the position taken in the letter to Defendant Commissioner Brooks, even though Plaintiff's June 27, 2025 inquiry was directed to Defendant Commissioner Brooks and there is no provision in Chapter 5 or the Firearms Regulations for internal administrative appeals.

56. On or about June 21, 2025, when Plaintiff travelled to St. Thomas, Plaintiff, upon disembarking at the Cyril E. King Airport ("CEKA"), Plaintiff took his MCX and HK in a secured travel container and duly declared with the airline, to the VIPD kiosk at CEKA to declare his firearms, as required by Chapter 5.

57. VIPD Officer Richard Velazquez, the officer on duty inspected Plaintiff's firearms and ammunition, and searched Plaintiff's luggage, and Plaintiff was previously advised by Lt. Jorge Gonzalez, the Director of the VIPD Firearms Bureau, that these steps were required as part the declaration process for bringing firearms into the U.S. Virgin Islands, even though there are no such requirements in Chapter 5 or the Firearms Regulations.

58. Lt. Jorge Gonzalez also previously made statements to Plaintiff implying that a failure to and consent to a search of the firearm luggage as part of the declaration process on each and every visit to the Territory could result in a felony arrest and/or confiscation of Plaintiff's firearms even though he had Virgin Islands licenses for both and they were already registered with the VIPD Firearms Bureau.

Case: 3:25-cv-00014-RAM-EAH    Document #: 46    Filed: 12/01/25    Page 11 of 18

Kosei Ohno v. Honorable Mario Brooks, et al.
District Court Case No. 3:25-cv-00014
Second Amended and First Supplemental Complaint
Page 11 of 18

## COUNT ONE – 42 U.S.C. § 1983
## (Second and Fourteenth Amendments – Direct Violation)

59. Plaintiff restates paragraphs 1 through 58 hereof as though fully set forth herein.

60. Plaintiff qualifies as a person eligible to receive a concealed carry firearms license under Chapter 5.

61. Plaintiff is a law-abiding citizen and has a presumptive right to possess and carry firearms for protection of himself, his business, Crown Bay Marina, and its employees.

62. Plaintiff's MCX qualifies as a pistol that is classified as a "handgun" under Chapter 5.

63. Plaintiff's MCX qualifies as a "concealed firearm or handgun" under Virgin Islands law.

64. No Virgin Islands law or federal regulation prohibits Plaintiff from owning, possessing or carrying the MCX or receiving a Virgin Islands concealed carry firearm for the same.

65. Commissioner Brooks' decision to deny Plaintiff's renewal application for a concealed carry license for his MCX, particularly since Plaintiff twice received such a license for MCX and applicable laws have not changed, is arbitrary, capricious, contrary to Virgin Islands law and federal regulations, and violates Plaintiff's Second Amendment and Fourteenth Amendment due process rights.

66. Commissioner Brooks' arbitrary and capricious decision to deny Plaintiff's renewal application for a concealed carry license for his MCX leaves Plaintiff without one of his chosen defense firearms, violating his Second Amendment right to arm himself for defense.

67. Commissioner Brooks' arbitrary and capricious decision to deny Plaintiff's renewal application for a concealed carry license for his MCX left Plaintiff exposed to possible criminal

Case: 3:25-cv-00014-RAM-EAH   Document #: 46   Filed: 12/01/25   Page 12 of 18

Kosei Ohno v. Honorable Mario Brooks, et al.
District Court Case No. 3:25-cv-00014
Second Amended and First Supplemental Complaint
Page 12 of 18

investigation and prosecution for exercising his Second Amendment right to arm himself for defense, and confiscation of the MCX, while this case is pending

68. Commissioner Brooks' arbitrary and capricious decision to deny Plaintiff's renewal application for a concealed carry license for his MCX and the prompt press coverage of this case left Plaintiff, and his business and its employees, exposed as targets of the criminal element as they know Plaintiff does not have the protection he previously possessed.

69. Upon belief, the July 11, 2025 letter to Plaintiff by Officer Velasquez was advising that Virgin Islands policy and practice prohibited Plaintiff from lawfully bringing to and possessing in the U.S. Virgin Islands Plaintiff's noise suppressor for his MCX, even though authorized by the ATF, and 30-round-capacity, standard magazines that are commonly used with the MCX, and imposing a non-existent internal appeals process was done at the direction of, and/or is a statement of the position of, Defendant Commissioner Brooks.

70. The actions and or directions of Defendant Commissioner Brooks were taken under color of territorial law, and deprived Plaintiff of Second Amendment right to possess and carry concealed his firearms, in violation of 42 U.S.C. § 1983.

71. Defendant Commissioner Brooks' actions and inactions taken in violation of 42 U.S.C. § 1983 include, but are not limited to: (a) denying Plaintiff's renewal application for a concealed carry license for his MCX; (b) issuing Plaintiff firearms licenses with designations other than "concealed carry"; (c) rejecting Plaintiff's ability to bring to and possess in the U.S. Virgin Islands his ATF authorized noise suppressor and 30-round-capacity, standard magazines commonly used with his MCX; (d) initially demanding Plaintiff present a Virgin Islands driver's license; (e) imposing a fee of $50.00 per firearm (currently $75 per gun) for his initial firearms licenses and $150.00 per firearm for his licensure renewals; (f) requiring a separate firearms license

Case: 3:25-cv-00014-RAM-EAH    Document #: 46    Filed: 12/01/25    Page 13 of 18

Kosei Ohno v. Honorable Mario Brooks, et al.
District Court Case No. 3:25-cv-00014
Second Amended and First Supplemental Complaint
Page 13 of 18

for each of Plaintiff's firearms; (g) not applying the provisions of Chapter 5 and the Firearms Regulations to Plaintiff according to their plain terms; (h) attempting to apply inapplicable federal laws and/or regulations to Plaintiff; and/or (i) not responding to Plaintiff's 2024 application for renewal of his concealed carry firearms license for almost 5 months.

<u>**COUNT TWO (42 U.S.C. § 1983)**</u>
<u>**(Second and Fourteenth Amendments – Policies, Practices, and Customs)**</u>

72.     Plaintiff restates paragraphs 1 through 71 hereof as though fully set forth herein.

73.     Defendants deprived, and continue to deprive, Plaintiff of his Second Amendment rights under color of territorial law in violation of 42 U.S.C. § 1983, through a host of customs, practices, and policies.

74.     The Defendants' violative customs, practices, and policies include, but are not limited to: (a) the unbridled discretion of police commissioners under Chapter 5 and the Firearms Regulations; (b) Chapter 5's and the Firearms Regulations' unconstitutionally limited classes of persons who may possess and carry concealed firearms in the U.S. Virgin Islands; (c) limiting or barring individuals right to possess and carry firearms attachments, such as noise suppressors, standard capacity magazines, and aiming devices (scopes, optics, red dot sights, low power variable optics (LPVO), etc.) despite the lack any governing laws or regulations regulating the same; (d) Chapter 5's high fees for initial and renewal fees for firearms licenses; (e) imposing on applicants the cumulative and overly burdensome presentation of information and documents as part of the firearms licensure process above and beyond what is constitutionally permissible and/or require by Chapter 5; (f) requiring a separate firearms license for each of Plaintiff's firearms; (g) requiring the transport of firearms to the Firearms Bureau for physical inspection; (h) not applying the provisions of Chapter 5 and the Firearms Regulations to Plaintiff according to their plain terms;

Case: 3:25-cv-00014-RAM-EAH    Document #: 46    Filed: 12/01/25    Page 14 of 18

Kosei Ohno v. Honorable Mario Brooks, et al.
District Court Case No. 3:25-cv-00014
Second Amended and First Supplemental Complaint
Page 14 of 18

(i) attempting to apply inapplicable federal laws and/or regulations to Plaintiff; (j) taking inordinate amounts of time to respond to applicant's firearms licensure and renewal applications causing unconstitutional delay; (k) requiring certificates of training and other requirements for concealed carry licenses and no other types of firearms licenses, as well as imposing fees for the use of, and other controls over, the sole public firearms range in the St. Thomas/St. John District in a manner that hinders and/or delays the process for obtaining concealed carry licenses; and/or (l) employing different guidelines between the St. Croix District and the St. Thomas/St. John District regarding what types of firearms and/or accessories are prohibited or allowable.

## COUNT THREE (42 U.S.C. § 1983)
### (Second and Fourth Amendments – Policies, Practices, and Customs)

75. Plaintiff restates paragraphs 1 through 58 hereof as though fully set forth herein.

76. Defendants deprived, and continue to deprive, Plaintiff of his Fourth Amendment rights to be free from unreasonable searches under color of territorial law in violation of 42 U.S.C. § 1983, through a host of customs, practices, and policies.

77. The Defendants' violative practices, customs, and policies include, but are not limited to: (a) requiring Plaintiff to allow Defendants to enter into his residence to inspect his firearm safe or vault as a condition of obtaining his initial concealed carry firearms licenses, when neither Chapter 5 nor the Firearms Regulations require such safes or vaults and do not authorize such entries and searches/inspections; and (b) requiring Plaintiff to submit to searches of his luggage when bringing firearms, ammunition, and/or firearm accessories into the U.S. Virgin Islands as a condition to his possessing such items while in the U.S. Virgin Islands, when neither Chapter 5 nor the Firearms Regulations authorize such searches and only require a traveler to declare such items upon coming into the U.S. Virgin Islands.

Case: 3:25-cv-00014-RAM-EAH    Document #: 46    Filed: 12/01/25    Page 15 of 18

Kosei Ohno v. Honorable Mario Brooks, et al.
District Court Case No. 3:25-cv-00014
Second Amended and First Supplemental Complaint
Page 15 of 18

78. Defendants' policies, practices, and customs of requiring Plaintiff to surrender his Fourth Amendment rights to be from unreasonable searches and seizures as a prerequisite to exercising his presumptive Second Amendment rights is unconstitutional.

### COUNT FOUR – 23 V.I.C. § 472
### (Administrative Appeal)

79. Plaintiff restates paragraphs 1 through 58 hereof as though fully set forth herein.

80. Plaintiff requests, and has established grounds for, this Court, in reviewing Commissioner Brooks' denial of Plaintiff's renewal application for his MCX pursuant to 23 V.I.C. § 472, issue an order reversing and/or vacating Commissioner Brooks' decision denying Plaintiff's renewal application for a concealed carry firearms license for his MCX and directing Commissioner Brooks to forthwith issue to Plaintiff a renewed concealed carry firearms license for his MCX.

### COUNT FIVE – 42 U.S.C. § 1983
### (Second and Fourteenth Amendments – Administrative Appeal Standard)

81. Plaintiff restates paragraphs 1 through 58 hereof as though fully set forth herein.

82. An aggrieved person, such as Plaintiff, in order to prevail on an appeal under Chapter 5, must demonstrate that a police commissioner's factual findings were fraudulent or constituted misrepresentations.

83. Neither Chapter 5 nor the Firearms Regulations require a police commissioner to issue findings of fact, and, upon information and belief, police commissioners do not issue findings of fact when denying firearms licenses applications or renewals.

84. The Chapter 5 appeal standard and the practice of police commissioners are designed to deprive Plaintiff's Second Amendment and Fourteenth Amendment due process rights

Case: 3:25-cv-00014-RAM-EAH   Document #: 46   Filed: 12/01/25   Page 16 of 18

Kosei Ohno v. Honorable Mario Brooks, et al.
District Court Case No. 3:25-cv-00014
Second Amended and First Supplemental Complaint
Page 16 of 18

by setting an impossible-to-meet standard in order to overturn decisions that deprived him of his presumptive right to bear firearms.

## COUNT SIX – SECOND AND FOURTEENTH AMENDMENTS
### (Facial Challenge)

85. Plaintiff restates paragraphs 1 through 58 hereof as though fully set forth herein.

86. On their faces, Chapter 5 and the Firearms Regulations violate Plaintiff's Second Amendment and Fourteenth Amendment due process rights in several ways, including, but not limited to: (a) creating a presumption that law-abiding persons are not entitled to carry and possess firearms for the defense of themselves, their businesses and other property, and/or defense of others; (b) creating very limited classifications of persons who are entitled to carry and/or possess firearms in the Territory; (c) creating very limited classification of persons who are eligible to apply for and receive licenses to carry and/or possess firearms in the Territory; (d) vesting unbridled discretion in the Police Commissioner to approve or deny applications for licenses to possess and/or carry firearms in the Territory; (e) requiring a separate firearms license for each of Plaintiff's firearms; (f) the VIPD's existing firearms rules and regulations do not apply to concealed carry firearms licenses, violate Second Amendment principles, and/or are inconsistent with Chapter 5; (g) contain irreconcilable provisions affecting Second Amendment rights; (h) creating an arbitrary and non-sensical standard for appeals of the Police Commissioner's denial of applications to possess and/or carry firearms in the Territory; and (i) creating an arbitrary appeals process that purports to deprive the District Court of its subject jurisdiction matter vested by the United States Congress

## COUNT SEVEN – REVISED ORGANIC ACT

87. Plaintiff restates paragraphs 1 through 58 hereof as though fully set forth herein.

Case: 3:25-cv-00014-RAM-EAH   Document #: 46   Filed: 12/01/25   Page 17 of 18

Kosei Ohno v. Honorable Mario Brooks, et al.
District Court Case No. 3:25-cv-00014
Second Amended and First Supplemental Complaint
Page 17 of 18

88. On its face, Chapter 5 is inconsistent with the Second Amendment, which is a United States law applicable to the United States Virgin Islands.

89. Under Section 8(a) of the Revised Organic Act, the Legislature of the Virgin Islands lacks the authority to enact laws that are inconsistent with laws of the United States that are made applicable to the United States Virgin Islands.

90. Because Chapter 5 is inconsistent with the Second Amendment, Chapter 5 is void under Section 8(a) of the Revised Organic Act.

WHEREFORE, Plaintiff requests the Court issue the following relief:

a. Preliminary and permanent injunctive relief as to Counts 1, 2, 3, and 5 prohibiting Defendants from violating Plaintiff's rights under the Second, Fourth, and Fourteenth Amendments and enjoining Defendants from engaging in the identified actions, practices, customs, and policies of Defendants;

b. Declaratory relief pursuant to 28 U.S.C. § 2201 as to all Counts declaring unconstitutional Chapter 5, the Firearms Regulations, and the identified actions, practices, customs, and policies of Defendants;

c. An order vacating Defendant Commissioner Brooks' denial of Plaintiff's application to renew his concealed with directions for Commissioner Brooks to issue proper renewed concealed carry licenses to Plaintiff for his HK and MCX;

d. An award to Plaintiff of reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

Case: 3:25-cv-00014-RAM-EAH     Document #: 46     Filed: 12/01/25     Page 18 of 18

**Kosei Ohno v. Honorable Mario Brooks, et al.**
**District Court Case No. 3:25-cv-00014**
**Second Amended and First Supplemental Complaint**
Page 18 of 18

  e. Such other relief as this Court deems appropriate and within its jurisdiction.

        Respectfully submitted,

Dated: December 1, 2025    **OGLETREE, DEAKINS, NASH, SMOAK & STEWART, LLC**

       By: */s/ Adam G. Christian*
         Adam G. Christian, Esq. (VI Bar No. 441)
         The Tunick Building, Suite 201
         1336 Beltjen Road
         St. Thomas, VI 00802
         Telephone: (340) 714-1235
         Email: adam.christian@ogletree.com

       *Attorneys for Plaintiff Kosei Ohno*