| DISTRICT COURT OF THE VIRGIN ISLANDS |
|---|
| DIVISION OF ST. THOMAS & ST. JOHN |

KOSEI OHNO,

            **Plaintiff,**

   v.

HONORABLE MARIO BROOKS,
In his capacity as COMMISSIONER OF
THE VIRGIN ISLANDS POLICE
DEPARTMENT and GOVERNMENT
OF THE VIRGIN ISLANDS,

            **Defendants.**

_____

3:25-cv-00014-RAM-EAH

TO:   Adam G. Christian, Esq.
       Julie Anne Beberman, Esq.

## REPORT & RECOMMENDATION

**THIS MATTER** comes before the Court on an Order by the District Judge, Dkt. No. 53, referring the pending Second Motion to Dismiss for Lack of Jurisdiction, filed by Defendants Mario Brooks, Commissioner of the Virgin Islands Police Department ("VIPD") and the Government of the Virgin Islands to the undersigned for a Report and Recommendation ("R&R"). Defendants filed the Second Motion to Dismiss on January 21, 2025, Dkt. No. 51; Plaintiff Kosei Ohno opposed the motion on February 27, 2026, Dkt. No. 72; and Defendants filed a Reply on March 3, 2026, Dkt. No. 75. For the reasons that follow, this Court recommends that the Second Motion to Dismiss be granted in part and denied in part.

## BACKGROUND

### A.  The Initial Complaints

On March 27, 2025, Mr. Ohno filed his initial complaint against the Defendants, Dkt. No. 1, followed by a First Amended Complaint ("FAC") on April 3, 2025, Dkt. No. 2. In the FAC, Mr. Ohno alleged that he was a principal of Crown Bay Marina, L.P. (the "Marina"), a Virgin

*Ohno v. Brooks*
3:25-cv-00014-RAM-EAH
Report & Recommendation
Page 2

Islands entity that owns and operates the Crown Bay Marina on St. Thomas; Defendant Mario Brooks is the Commissioner of the VIPD; and Defendant Government of the Virgin Islands is the governing body for the U.S. Virgin Islands. Dkt. No. 2, ¶¶ 3-5. Commissioner Brooks was tasked, inter alia, with licensing persons to possess and carry firearms in the Territory and other duties related to firearms found in Title 23, Chapter 5 of the Virgin Islands Code ("Chapter 5"). *Id*. ¶ 6. In 2018, Mr. Ohno applied to the VIPD Firearms Division for a concealed carry firearms license for two pistols: a 9 mm P30 HK ("HK") and a 300 Sig Sauer MCX ("MCX"). *Id.* ¶ 9. The then-Commissioner approved his concealed carry applications and his renewal applications in 2021. *Id.* ¶¶ 11-13. When Mr. Ohno attempted to renew his licenses for both firearms in August 2024, the VIPD refused to accept the applications until he obtained a V.I. Driver's license. *Id.* ¶¶ 19-20; Dkt. No. 1-1. Mr. Ohno alleged that he resides in Washington State and travels to the Virgin Islands for business; he does not remain in the Virgin Islands such that he would have to obtain a V.I. driver's license. *Id.* ¶ 22.

Mr. Ohno wrote Commissioner Brooks and the Director of the VIPD Firearms Bureau in October 2024, explaining why Chapter 5 did not require him to have a V.I. driver's license, and asked that his renewal application be granted. *Id.* ¶¶ 21-26. In a March 12, 2025 response, Commissioner Brooks denied the application because the MCX was an "assault weapon" under the Virgin Islands Code, had the capacity to be converted into a short-barreled rifle, had a removable scope, and was a "military-style or tactical firearm" and not a "standard handgun" under V.I. law. *Id.* ¶¶ 27-29. Upon requesting clarification, Mr. Ohno was advised that the renewal application for the HK was approved. *Id.* ¶¶ 30, 31.

*Ohno v. Brooks*
3:25-cv-00014-RAM-EAH
Report & Recommendation
Page 3

Mr. Ohno responded in a March 20, 2025 letter, contesting the reasons for denying the MCX renewal application, reiterating that the MCX was eligible for a concealed carry license under Chapter 5 and that the Commissioner's decision was an abuse of discretion, and requested issuance of a renewed concealed carry license for the MCX. *Id.* ¶ 32. The Commissioner failed to respond, prompting Mr. Ohno to file suit seeking injunctive and declaratory relief. *Id.* ¶ 33. The FAC alleged five counts: (1) violation of Plaintiff's Second Amendment and Due Process rights; (2) request for mandatory preliminary and permanent injunctive relief; (3) reversal/vacatur of the Commissioner's decision and a directive to issue a renewed concealed carry license for the MCX; (4) declaratory relief that Chapter 5 is void and unenforceable per the Second Amendment; and (5) declaratory relief that Chapter 5 is void and unenforceable pursuant to the Revised Organic Act § 8(1). *Id.* at 6-9.

## B. Preliminary Injunction Order

In April 2025, Mr. Ohno filed a Motion for a Temporary Restraining Order and Preliminary Injunction seeking to continue his 2021 firearms license for the MCX during the pendency of this litigation. Dkt. No. 12, 13. In their Response, the Defendants "consent[ed] to a preliminary injunction extending Mr. Ohno's concealed carry firearms license for the MCX, with the caveat that Mr. Ohno still must adhere to the status quo of complying with 23 V.I.C. § 455 by applying for renewal of his extended license every three years and meeting all requirements for renewal." Dkt. No. 24. The Response went on to say that "[s]o long as the litigation is ongoing concerning whether the MCX may be registered for concealed carry, the [VIPD] will not deny the re-extension of Mr. Ohno's license based on the type of firearm." *Id.*

Mr. Ohno filed a reply reaffirming that his request for a preliminary injunction should be granted and opposing the conditions described in Defendants' response. Dkt. No. 28.

The District Judge entered a Preliminary Injunction Order on May 26, 2025 that granted Plaintiff's motion in part. Dkt. No. 30. The Order directed the Defendants to issue a concealed carry firearms license for the MCX, extending the 2021 license through May 23, 2028. *Id.* The Order further provided that, if the litigation remained pending in May 2028, Mr. Ohno should apply for further extension of the license in accordance with 23 V.I.C. § 455, and, during the litigation, Defendants should not deny Plaintiff's application to extend the 2021 MCX license based on the type of firearm but could deny an extension for lawful reasons set forth in 23 V.I.C. §§ 456a and 458. *Id.* The Order would remain in effect until final judgment, unless modified by another Court Order. *Id.*

### C.  First Motion to Dismiss

In June 2025, Defendants moved to dismiss for lack of jurisdiction due to mootness, arguing that with the granting of Mr. Ohno's concealed carry application and renewal of his license, he had received all of the relief that the Court could afford him, thereby rendering his request for a declaratory judgment invalidating the V.I. firearms statutes and regulations moot. Dkt. No. 33. They argued that Mr. Ohno no longer had an injury-in-fact, and none of the exceptions to the mootness doctrine applied. *Id.*

In his Opposition, Mr. Ohno asserted that Defendants did not meet their burden to show mootness, the record facts were relevant to both the jurisdictional and merits issues, his case was not mooted by Defendants' decision because the license renewal issues were

capable of repetition, and the renewal had no bearing on his challenges to Chapter 5 under the Second and Fourteenth Amendments and the Revised Organic Act. Dkt. No. 34. He also argued that the Defendants did not have the authority to unilaterally change their March 12, 2025 decision (denying the MCX renewal application) and were attempting to engineer a failure of subject matter jurisdiction. *Id.* at 5. Defendants filed a Reply, asserting that the "voluntary cessation" exception to mootness did not apply because there was no indication that the Commissioner would revoke, suspend or refuse to renew Mr. Ohno's license in the future. Dkt. No. 35 at 2. No change to V.I. laws or regulations was needed to moot Mr. Ohno's claims because he had no injury, the Commissioner had jurisdiction to reconsider his decision, and Mr. Ohno's concerns about the firearms licensing regime were not sufficient for the court to retain jurisdiction. *Id.* at 4-8.

On February 2, 2026, the District Judge ruled that, upon the filing of the Second Amended Complaint, this Motion to Dismiss was moot. Dkt. No. 53.

**D. Motion to Amend Complaint**

On September 4, 2025, Mr. Ohno filed a Motion for Leave to Amend Complaint in which he sought leave to file a "Second Amended and First Supplemental Complaint" ("SAC"). Dkt. No. 36. The proposed SAC expanded the factual allegations to include events occurring both before and after his license renewal attempt in 2024, including events surrounding his 2018 initial application for firearms licenses, Dkt. No. 36-1 at ¶¶ 15-18; allegations relating to his 2021 renewal of the licenses, *id*. ¶¶ 21-22; and miscellaneous allegations not related to those events, *id*. ¶¶ 7, 9. 10, 13, 26. Post-March 2025 allegations concerned the actual

*Ohno v. Brooks*
3:25-cv-00014-RAM-EAH
Report & Recommendation
Page 6

issuance of the licenses for Mr. Ohno's HK and MCX firearms and his efforts in June 2025 to bring into the V.I. a noise suppressor and large capacity magazine ("LCM") for his MCX firearm. Dkt. No. 36-1 ¶¶ 44-58. In the latter regard, he alleged that he wrote Defendant Brooks requesting confirmation that he could bring those items to the Virgin Islands, and legal authority if the Commissioner believed they could not be lawfully possessed in the Territory. *Id.* ¶ 53. In July 2025, he was informed they could not be brought. *Id.* ¶ 54. Mr. Ohno proposed to add the denial of these requests to the list of § 1983 violations in Count I, ¶¶ 69, 71 and Count II, ¶ 74. Dkt. No. 36-1. Other proposed amendments clarified the titles of the cause of action (asserting that he was bringing Counts I-III and V under 42 U.S.C. § 1983); buttressed the allegations action under the Revised Organic Act; added new causes of action under § 1983 (including under the Fourth Amendment) and a facial challenge under the Second and Fourteenth Amendments. Dkt. No. 36-1. He also separated the causes of action from the claims for relief (including injunctive relief under Counts I-III and V, declaratory relief, and an order vacating Defendant Brooks's denial of Mr. Ohno's application to renew his licenses). Dkt. No. 36-1.

In their Opposition, Defendants contended, inter alia, that the motion should be denied "if the Court grants Defendants' motion to dismiss due to mootness," given the arguments advanced in their Motion to Dismiss and Reply. Dkt No. 40 at 3-4. They asserted that the Motion for Leave to Amend sought to create subject matter jurisdiction by alleging new facts supporting new causes of action to revive Mr. Ohno's moot complaint. *Id*. But since he was not seeking to cure any defect in his jurisdictional allegations, his Motion to Amend

must be denied as moot, without prejudice. The Defendants also raised futility arguments (untimeliness and failure to state a claim), *id*. at 3-10, and asserted that supplementation would be futile, *id*. at 10-18. In his Reply, Mr. Ohno argued that the action was not moot, relying on his arguments in opposition to the Motion to Dismiss. Dkt. No. 44 at 1-2. He challenged the time-bar argument by raising the continuing violations doctrine. *Id.* at 14-17.

### E.     Order Granting Leave to Amend

In an Order filed November 26, 2025, the Court granted Plaintiff's Motion for Leave to Amend. Dkt. No. 45. It concluded, inter alia, that the Preliminary Injunction did not end the case and did not make any determination on the merits of Plaintiff's claims: it merely granted preliminary relief permitting him to renew his MCX license for a discrete period of time. If the Defendants had sought to conclude the case by that Order, they could have negotiated for such a resolution—but they did not. The Court rejected Defendants' argument that the FAC was moot and that the Court had no subject matter jurisdiction over it, which would have ended the case prior to the Plaintiff filing the proposed SAC. *Id.* at 19. The Court permitted Plaintiff to file the SAC, which he did on December 1, 2025. Dkt. No. 46. The Defendants did not object to this Order.

On March 13, 2026, Mr. Ohno filed an Unopposed Motion for Leave to File Corrected Second Amended and First Supplemental Complaint, Dkt. No. 76, which the Court granted, Dkt. No. 77. The Corrected SAC alleges requests for injunctive relief on all counts. Plaintiff filed the Corrected SAC on March 16, 2026. Dkt. No. 78. On April 8, 2026, the parties filed a Stipulation clarifying that pending Motions (including the Second Motion to Dismiss) applied

*Ohno v. Brooks*
3:25-cv-00014-RAM-EAH
Report & Recommendation
Page 8

to the Corrected SAC. Dkt. No. 83. The Court accepted that Stipulation. Dkt. No. 84. The Court

will refer to the Corrected SAC as the "SAC" for ease of reference.

### F.    Second Motion to Dismiss for Lack of Jurisdiction

On January 21, 2026, Defendants filed a Second Motion to Dismiss for Lack of

Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Dkt. Nos.  51, 52. They stated that the new

claims in the SAC were not relevant to their Motion to Dismiss, maintaining that because the

claims made in the FAC were moot, the entire matter was moot at that point and deprived

the Court of subject matter jurisdiction before the SAC was filed. *Id.* at 3. The Defendants

attached a January 21, 2026 Declaration from Defendant Brooks in which he stated: (1) he

initially denied Mr. Ohno's application, concluding that the MCX was an assault weapon that

could potentially be configured as a short-barreled rifle not suitable for concealed carry,

based on "the implied intent" of the Virgin Islands firearms statutes; (2) after further

consideration, he found that renewal of the MCX license would not violate the express terms

of those statutes, which he was bound to apply; (3) because there was no basis to deny the

renewal given those express terms, he granted Mr. Ohno's application and renewed his MCX

license; and (4) unless there was a change in the V.I. statutes, future renewal applications

would not be denied based on the type of weapon. *Id.* at 3-4 (citing Dkt. No. 52-1).

The Defendants asserted that they were making a factual challenge to subject matter

jurisdiction (relying on evidence outside the pleadings—the Declaration and renewal

licenses). *Id.* at 5. The voluntary cessation doctrine, based on actions a defendant takes

"unilaterally after the litigation began," moots a case only if it is "absolutely clear that the

*Ohno v. Brooks*
3:25-cv-00014-RAM-EAH
Report & Recommendation
Page 9

allegedly wrongful behavior could not reasonably be expected to occur." *Id*. at 5 (quoting

*Hartnett v. Pa State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020)). Citing 28 U.S.C. § 1653,

Defendants argue that although defective allegations of jurisdiction may be amended, no

such defective allegations occurred here. A moot case could not be cured by alleging new

facts but must be dismissed, even if a complaint was amended to add a live claim. *Id.* at 6-7.

They further argue that denial of Mr. Ohno's MCX renewal application will not reoccur

under current Virgin Islands law. *Id*. at 8. Defendant Brooks's denial was based on "the

implied intent of the Virgin Islands firearms statutes" but, upon reconsideration, he reversed

his decision and declared that Plaintiff's future applications will not be denied based on the

type of weapon under the express terms of the statute. *Id*. Defendants consider themselves

bound by those express terms; unless the statute changes, there is no possibility that Mr.

Ohno will be denied a license for his MCX, and the voluntary cessation exception to mootness

does not apply because the allegedly wrongful behavior could not reasonably be expected to

occur again. *Id.* at 8-9. Approval of the renewal application eliminated the injury upon which

Mr. Ohno's facial challenge was based, and the facial challenge was moot as a Court ruling in

his favor would not give him any further relief. *Id.* at 10. Per 23 V.I.C. § 472, Mr. Ohno did not

appeal the denial of his renewal application to Superior Court, and the district court did not

have jurisdiction to decide his administrative appeal, although the Commissioner retained

jurisdiction to grant the renewal application. *Id*. at 12. Moreover, Mr. Ohno's concerns about

the firearms licensing regime were not sufficient for the Court to retain jurisdiction, as his

concerns did not give him standing. *Id.* at 12-13. Defendants granted him the relief sought in his FAC, which is now moot, and the Court should dismiss the SAC due to mootness. *Id*. at 15.

In his Opposition, Mr. Ohno contends that, given that an amended complaint supersedes the original and renders it of no legal effect, Defendants' references to the FAC were improper. Dkt. No. 72 at 3. Further, while asserting their challenge to the FAC is factual, Defendants apparently raise a facial challenge, making it difficult to determine what Defendants were arguing under 28 U.S.C. § 1653. *Id*. Even so, Plaintiff never moved to amend under § 1653 because both complaints contained sufficient allegations to sustain subject matter jurisdiction and Defendants do not point out what jurisdictional allegations were lacking. The SAC pleads that Defendants violated and continue to violate Plaintiff's rights under the Constitution and statues and he has properly pleaded federal question jurisdiction. *Id.* at 4. To the extent Defendants argue that the Court erred in allowing the SAC, they waived that argument by not filing any objections to that non-dispositive Order. *Id.* Finally, even if § 1653 were applicable, it is construed to avoid dismissal of cases on technicalities, and the Motion to Dismiss fails under the Third Circuit's construction of the statute. *Id*. at 4-5.

In their Reply, Defendants reiterate that because Mr. Ohno has been afforded complete relief, the case is moot and must be dismissed, as no mootness exception applies—focusing again on the FAC. Dkt. No. 75. They also contend that Defendants have not violated the Preliminary Injunction Order by granting further relief to Mr. Ohno, *id*. at 9-11.

*Ohno v. Brooks*
3:25-cv-00014-RAM-EAH
Report & Recommendation
Page 11

**DISCUSSION**

I.     **Relevant Standards**

A.  **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)**

"Dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is appropriate when the District Court lacks jurisdiction over the subject matter of the case." *Goodman v. People's Bank,* 209 F. App'x 111, 113 (3d Cir. 2006). A motion to dismiss for lack of subject matter jurisdiction may be raised "at any time." *Multicultural Radio Broad., Inc. v. Korean Radio Broad., Inc.*, No. 15-cv-1961, 2017 WL 436250, at *2 (D.N.J. Jan. 31, 2017).

When considering a motion to dismiss under Rule 12(b)(1), a court must distinguish between facial and factual challenges to its subject matter jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack challenges whether the plaintiff has properly pleaded jurisdiction on the face of the complaint. *Id.* "A factual challenge "contests the truth of the allegations underlying a plaintiff's assertion of subject-matter jurisdiction." *Multicultural Radio Broad., Inc.*, 2017 WL 436250, at *2, and considers facts apart from the pleadings. *Mortensen*, 549 F.2d at 891; *see also Carpet Group Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69 (3d Cir. 2000). Factual challenges on mootness grounds can be raised at any time in the litigation. *Mortensen,* 549 F.2d at 891-92. By relying on the Brooks Declaration and license renewal, Defendants have put forth a factual challenge.

B.  **Mootness**

The jurisdiction of the federal courts is limited to "Cases" and "Controversies". U.S. Const. art. III, § 2, cl. 1. "Thus, [we] can entertain actions only if they present live disputes,

*Ohno v. Brooks*
3:25-cv-00014-RAM-EAH
Report & Recommendation
Page 12

ones in which both sides have a personal stake." *Hartnett*, 963 F.3d at 305. "The doctrine of mootness ensures that this condition remains throughout the life of the lawsuit." *Clark v. Governor of N.J.*, 53 F.4th 769, 775 (3d Cir. 2022); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.") (citation modified). If it is impossible for a federal court to "grant any effectual relief whatever to the prevailing party, then the case is moot." *Id.; see also Goodman,* 209 F. App'x at 113 ("[A]n offer for the entirety of a plaintiff's claim will generally moot the claim.")

One scenario in which courts "are reluctant to declare a case moot is when the defendant argues mootness because of some action it took unilaterally after the litigation began. This situation is often called voluntary cessation, and it will moot a case only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Hartnett*, 963 F.3d at 306 (citation modified). In such cases, the defendant bears a particularly "heavy burden of showing that it will not revert to its prior policy." *Fields v. Speaker of the Pa. House of Representatives*, 936 F.3d 142, 161 (3d Cir. 2019) (citation modified).

## II.  Application

### A.  The Second Motion to Dismiss

Although discovery has not commenced, this case has already been extensively litigated, with two Motions to Dismiss, a Motion to Amend, and a Motion to Stay having been

filed. In addition, as indicated above, the mootness issue has been litigated in all of those motions, to various extents, and the parties' mootness arguments have evolved. Attempting to provide a Report & Recommendation on the second Motion to Dismiss has been made the more cumbersome, in part, because the Defendants have introduced a procedural anomaly that must be contextualized in addressing the mootness issue before the Court.

The mootness issue, as presented by the Defendants, is not straightforward. When distilled to its essence, the Defendants' position in their second Motion to Dismiss is that the First Amended Complaint was moot before the Second Amended Complaint was even filed. This is because a case that is moot ab initio cannot be revived by alleging new facts that would support new causes of action. Consequently, their mootness arguments focus on the FAC. But instead of reiterating the arguments they made in their first Motion to Dismiss (essentially that the Preliminary Injunction Order mooted out the FAC), they rely on a new Declaration by Defendant Brooks, dated January 21, 2026, attached to their second Motion to Dismiss. Defendants filed the Declaration nine months after Plaintiff sought a preliminary injunction, eight months after the District Judge granted it in part, seven months after Defendants filed their first Motion to Dismiss, and two months after the Court granted the Motion to Amend. Although it is recently filed, Defendants rely on it to somehow, nunc pro tunc, support their position that the FAC was moot. The Defendants provide no case law—other than the uncontroversial proposition that challenges to subject matter jurisdiction may be raised at any time—to buttress their position that the Court may consider this new Declaration to apply retroactively and Defendants may incorporate it into its analysis of

*Ohno v. Brooks*
3:25-cv-00014-RAM-EAH
Report & Recommendation
Page 14

whether the FAC was moot ab initio—although the Declaration did not exist during the entire life of the FAC.[1] The Court does not accept this invitation.

Moreover, the Defendants have not satisfactorily addressed the well-established principle that "[i]n general, an amended pleading supersedes the original pleading and renders the original pleading a nullity," so "the most recently filed amended complaint becomes the operative pleading." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019); *see also Royal Canin U.S.A. Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("If a plaintiff amends her complaint, the new pleading supersedes the old one: The original pleading no longer performs any function in the case.") (citation modified); *cf. Khalil v. President of the United States*, 164 F.4th 259, 272 (3d Cir. 2026) ("The government is also right that when 'a plaintiff amends [his] complaint. . . a federal court's jurisdiction depends on what the new complaint says.'" (quoting *Royal Canin*, 604 U.S. at 30). In opposing the Motion to Amend, Defendants

---

[1] The closest analogue to this procedural anomaly may be a motion for reconsideration based on new evidence, as the second Motion to Dismiss in many ways challenges the Court granting the Motion to Amend. Leaving aside any untimeliness issue, *see* LRCi 6.1(b)(2), in order for the Declaration to be considered "new evidence," it would have to be newly discovered evidence or evidence that was unavailable at the time the initial order or decision was rendered. *See, e.g., Blystone v. Horn*, 664 F.3d 397, 415-16 (3d Cir. 2011) ("'We have made clear that new evidence, for reconsideration purposes, does not refer to evidence that a party submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available. Evidence that is not newly discovered, as so defined, cannot provide the basis for a successful motion for reconsideration.") (citation modified). "[T]he moving party has the burden of demonstrating the evidence was unavailable or unknown at the time of the original hearing." *Interfaith Cmty. Org., Inc. v. PPG Indus., Inc.*, 702 F. Supp. 2d 295, 317-18 (D.N.J. 2010). The Court sees no reason why the Brooks Declaration could not have been submitted earlier, as it basically explains why the Commissioner denied the renewal application in March 2025.

raised the question of mootness; when it granted that motion, this Court—acknowledging that the District Judge would make the ultimate decision on the (then-pending) first Motion to Dismiss based on mootness—analyzed whether the FAC was moot, concluded that it did not appear to be, and permitted the amendment. Defendants did not appeal that decision.

Defendants are correct that subject matter jurisdiction may be raised at any time. But instead of raising that point in relation to the operative SAC, they raise it in reference to the superseded FAC. They import case law related to 28 U.S.C. § 1653 in support. That statute provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." As Defendants point out, case law holds that a party may amend "only defective allegations of jurisdiction; it does not provide a remedy for defective jurisdiction itself." Dkt. No. 52 at 6-7 (quoting *Field v. Volkswagenwerk AG*, 626 F.2d 293, 306 (3d Cir. 1980)). But here, Mr. Ohno did not move to amend under § 1653; this issue has never been before the Court. Defendants' reliance on § 1653 case law is premised on the FAC being moot and therefore lacking subject matter jurisdiction. Given that the Defendants' argument in their second Motion to Dismiss is premised on the FAC being moot, the Court will address that issue. However, it will not do so by considering the newly-minted Brooks Declaration as a factor in its analysis, given that the Declaration did not exist during the life of the FAC. The argument that the FAC is moot is, ironically, contained in the now-mooted first Motion to Dismiss, reiterated to some extent in the second Motion to Dismiss.[2]

---

[2] Even if this Court were somehow prohibited from considering the arguments raised in the

The FAC contained five causes of action, in which Mr. Ohno asked the Court to issue (1) a TRO to continue his 2021 concealed carry license so he could continue to carry his MCX without fear of prosecution or confiscation; (2) preliminary and permanent injunctive relief directing Commissioner Brooks to issue a renewed concealed carry license for his MCX; (3) an order reversing or vacating the Commissioner's decision denying the renewal application and directing the Commissioner to issue a renewed concealed carry license for the MCX; (4) declaratory judgment that "Chapter 5" and the VIPD's firearms rules and regulations violated the Second Amendment; and (5) declaratory judgment that Chapter 5 is void and unenforceable and violated the Revised Organic Act § 8(a). Dkt. No. 2. Immediately after Defendants appeared in this case, Mr. Ohno filed a Motion for a TRO and Preliminary Injunction. Dkt. No. 12. In their response, the Defendants agreed to a preliminary injunction (based on the type of firearm) as long as the litigation was ongoing. Dkt. No. 24. The District Judge issued the Preliminary Injunction Order on May 26, 2025 that provided, inter alia, that Defendants would issue a V.I. concealed carry firearms license to Mr. Ohno for his MCX that extended his 2021 license through May 2028, and Defendants would not deny his application to extend his 2021 license, based on the type of firearm, "[d]uring the life of this litigation." Dkt. No. 30. Thereafter, in their first Motion to Dismiss, Defendants argued that the FAC was moot as a result of the fact that Mr. Ohno's MCX license was renewed, he received all the

---

first Motion to Dismiss, if it were to consider mootness of the FAC sua sponte and independently, it would examine the impact of the Preliminary Injunction Order to ascertain if it rendered the FAC moot.

*Ohno v. Brooks*
3:25-cv-00014-RAM-EAH
Report & Recommendation
Page 17

relief the Court could afford him, there was no reason to expect the alleged violation to recur, and none of the five counts presented a live controversy. Dkt. No. 33.

The limitation of the Preliminary Injunction Order as a basis for mooting the entire FAC is readily apparent. While the preliminary injunction did serve the function of a TRO and did resolve Count I, by its terms it was not a permanent injunction and did not moot Count II (and did not ensure that a denial would not occur in the future), and the Order did not purport to reverse or vacate the Commissioner's denial (Count III). The fact that the Preliminary Injunction Order did not moot the FAC is underscored by Defendants' filing the Brooks Declaration in January 2026. It seeks to make the point that the case is moot because—given the Commissioner's explanation that he read the statute incorrectly and he is now bound by the statute's explicit terms (which do not preclude a license for the MCX)— denial of a renewal application for the MCX will not change unless there is a change to the V.I. firearms statutes. Dkt. No. 52-1. Although Commissioner Brooks does not so aver, the Defendants argue that that position is binding on all future Commissioners. Dkt. No. 75 at 4. In the Court's view, the fact that Defendants believed they had to shore up their mootness position by filing the Brooks Declaration shows that the Preliminary Injunction Order did not moot out the case. Further, Counts IV and V of the FAC, challenging other aspects of the V.I. firearms regimen under the Second Amendment and Revised Organic Act, were not mooted by the Order. Thus, the Court rejects Defendants' premise in both their first and second Motions to Dismiss that the FAC was moot before the SAC was even filed and recommends that the District Court deny the second Motion to Dismiss on that basis.

*Ohno v. Brooks*
3:25-cv-00014-RAM-EAH
Report & Recommendation
Page 18

**B. Mootness Sua Sponte**

A court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3); *Grp. Against Smog & Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues sua sponte"). Defendants glancingly raise this issue in their Reply when they assert, without further argument, "Therefore, notwithstanding the denial of Defendants' first motion to dismiss for lack of subject matter jurisdiction as moot in light of the filing of Defendants' second motion to dismiss for lack of subject matter jurisdiction, the Court must consider Defendants' second motion to dismiss for lack of subject matter jurisdiction and assure itself that subject matter jurisdiction exists, before reaching the merits." Dkt. No. 75 at 9. Here, the Court may consider the Brooks Declaration as it pertains to the issue of mootness of the SAC.

Peppered throughout the SAC, however, are new allegations related to the denial of the noise suppressor and LCMs, that are not mooted by the Preliminary Injunction Order or the Declaration. While some of the SAC's claims may be open to challenge pursuant to failure to state a claim—which Defendants did not argue in their second Motion to Dismiss—the Court, having reviewed the SAC for mootness sua sponte, concludes that Count IV has been rendered moot and recommends that the District Judge grant the Motion to Dismiss as to Count IV of the SAC.

Count IV, entitled "Administrative Appeal," asks the Court to review Commissioner Brooks' denial of his renewal application for the MCX pursuant to 23 V.I.C. 472, issue an order

*Ohno v. Brooks*
3:25-cv-00014-RAM-EAH
Report & Recommendation
Page 19

reversing or vacating the Commissioner's decision denying renewal, and directing the Commissioner to forthwith issue Mr. Ohno a renewed concealed carry license for his MCX. Dkt. No. 78 at 15. The Court will reprise the parties' arguments. The Defendants contend that Commissioner Brooks issued the renewed license that Mr. Ohno sought and the Court cannot grant him any further relief. Dkt. No. 52 at 11-12. In addition, because Mr. Ohno did not appeal the denial of his renewal application in Superior Court pursuant to 23 V.I.C. § 472, nothing prevented the Commissioner from reconsidering that decision. *Id*. at 12. Mr. Ohno responds that nothing in that law provides that a police commissioner maintains jurisdiction over a denied application after the case was filed in district court. *Id*. at 8-9.  Changing his decision after an appeal is filed would render Mr. Ohno's statutory entitlement (under § 472) to judicial review meaningless. *Id.* at 9. Moreover, the federal court has jurisdiction over Mr. Ohno's § 472 statutory appeal via supplemental jurisdiction. *Id.* at 10. Finally, the Commissioner's "unilateral and unauthorized decision to issue a renewed license" altered the terms of the Preliminary Injunction Order, since Defendants agreed to extend, not renew the MCX license while the case proceeded. *Id*. at 11. In their Reply, the Defendants assert that Commissioner Brooks considers himself bound by the "literal terms of the applicable statutes," there is no possibility that Mr. Ohno would be denied a firearms license for the MCX based on the type of weapon, and the voluntary cessation doctrine did not apply because there was no reasonable expectation the violation would recur. Moreover, they complied with the Preliminary Injunction Order: it was nonsensical for Plaintiff to sue for relief and then argue that Defendants violated his rights or a court order by affording that

*Ohno v. Brooks*
3:25-cv-00014-RAM-EAH
Report & Recommendation
Page 20

very relief. In addition, an appeal of the Commissioner's Order did not lie in federal Court, as only the Superior Court has jurisdiction over petitions for writs of review of V.I. agency actions. Dkt. No. 75.

Count IV of the SAC is completely backward-looking; in other words, the relief it seeks—for the Commissioner to issue a renewed concealed carry firearms license for the MCX—has already taken place. *See* Dkt. No. 75-2 (renewed license). That Count does not, for instance, seek future renewals of the license. Because the relief sought has been granted, the conditions precedent set out in this Count—that the Court review Commissioner Brooks's denial of the renewal application pursuant to 23 V.I.C. 472 and issue an order reversing the denial—are moot. Moreover, while the administrative appeal argument fails because the claim itself is moot, the Court agrees with Defendants that, per the explicit text of 23 V.I.C. § 472, "judicial review" of the Commissioner's negative decision lay in "filing an appeal with the Superior Court of the Virgin Islands within 15 days after the date of the action complained of." Dkt. No. 52 at 12. Mr. Ohno did not file an appeal, timely or not, in the Superior Court. Per the terms of the statute, the district court does not have jurisdiction over the administrative appeal. *Smith v. U.S.V.I. Police Dep't*, 27 V.I. 42, 43 (V.I. Terr. Ct. 1992). Consequently, the Commissioner was free to revisit his decision denying the renewal application. Moreover, granting the relief requested did not, in any way, violate the terms of the Preliminary Injunction Order.

*Ohno v. Brooks*
3:25-cv-00014-RAM-EAH
Report & Recommendation
Page 21

### C. Standing Sua Sponte

Defendants briefly argue that Mr. Ohno's general objections to the V.I. firearms laws and regulations do not translate to a cognizable injury as he has no standing. Dkt. No. 52 at 12-13. Their argument is conclusory and relies on an extensive quote from *Taveras v. New York City*, No. 20-cv-1200, 2023 WL 3026871, at *6 (S.D.N.Y. Apr. 20, 2023), without applying it to this case. Because of the confusion engendered by the fact that the second Motion to Dismiss is directed to the FAC, which contains fewer and differently numbered counts than the SAC, and those counts contain different allegations, it is difficult to address this argument. Nevertheless, the Court concludes that *Taveras* is inapposite, both procedurally and substantively.[3] Here, Mr. Ohno has challenged discrete provisions of the V.I. firearms statutes/regulations that, he asserts, do affect him. Whether he has in fact stated a claim for relief is different from whether he has standing to challenge the provisions. Given the Defendants' vestigial argument, based on the text of a case that does not appear to apply, the

---

[3] Initially, the plaintiff in *Taveras*—whose firearm permit was not approved—challenged discrete provisions of the New York City firearms regulations and city code. The court addressed the matter on the merits and granted defendants' motion to dismiss in full. During the appeal, the U.S. Supreme Court decided *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 132 S. Ct. 2111 (2022), which required courts to undertake a different approach in assessing the constitutionality of gun regulations, and remanded. The plaintiff filed an amended complaint challenging numerous provisions of the City's gun regulation scheme (including the entirety of certain sections of the code and regulations). Plaintiff was subsequently issued a license, and defendants again moved to dismiss. The court granted that motion, concluding that plaintiff did not plead, much less establish, past or present injury under the numerous, provisions he was challenging, which were inapposite to his circumstances and did not affect him. *Taveras*, 2023 WL 3026871.

*Ohno v. Brooks*
3:25-cv-00014-RAM-EAH
Report & Recommendation
Page 22

Court rejects Defendants' argument that Mr. Ohno has no standing to challenge specific regulations that, he asserts, do affect him.

## CONCLUSION

Accordingly, the Court **RECOMMENDS** that Defendants' Second Motion to Dismiss, Dkt. No. 51, be **GRANTED IN PART AND DENIED IN PART.** The Court **RECOMMENDS** that the Motion be **GRANTED** to the extent that the Court **DISMISSES COUNT IV** of the Corrected Second Amended and First Supplemental Complaint, Dkt. No. 78, and that the Motion be **DENIED** to the extent that the First Amended Complaint was not moot and did not moot the Corrected Second Amended and First Supplemental Complaint, and that the remaining Claims in the Corrected Complaint (other than Count IV) be permitted to proceed.

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice, 28 U.S.C. § 636(b)(1), and must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection." LRCi 72.3.  Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. *See, e.g., Thomas v. Arn*, 474 U.S. 140 (1985).

ENTER:

Dated: April 27, 2026                          /s/ Emile A. Henderson III
                                               EMILE A. HENDERSON III
                                               U.S. MAGISTRATE JUDGE